Filed 5/10/21  P. v. Sickman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C088251 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F2148) |
| v. | |
| RICKY EUGENE SICKMAN, | |
| Defendant and Appellant. | |

Defendant Ricky Eugene Sickman was convicted of assault, child abuse, and child endangerment, and placed on probation.  On appeal, he contends the trial court erred in failing to instruct the jury on defense of others.  He also argues the trial court erred in excluding evidence relevant to his self-defense claim.  Defendant also challenges several of his probation conditions and, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), argues the trial court erred in imposing various fines and fees without holding a hearing regarding defendant's ability to pay them.  We will modify certain probation conditions, order the trial court to modify the minute order to reflect the trial court's oral pronouncement of judgment, and otherwise affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

1.    *Instant offense*

High school students T., J., Z., and C. were walking home after school on the afternoon of April 18, 2018.  The friends stopped on the sidewalk and started "play fighting," by yelling profanity and throwing punches at each other.  Defendant came out of his house, which abuts the school property, and started "yelling" at the boys.  Defendant seemed angry and threatened to call the police if the boys threw another punch.  The boys yelled back, swearing at defendant and saying they had not done anything wrong.  Defendant, who was behind the fence separating his yard from the sidewalk, approached the boys, and they all continued yelling at each other.

A minute later, the boys started walking back toward school when defendant suddenly jumped the fence.  They all continued yelling at each other as defendant approached.  When defendant was only a few feet away, T. asked, "What are you gonna do?"  Defendant responded, "I'm going to take you out," and lunged at T. and grabbed him around his neck.  T., who was experiencing trouble breathing and blurry vision, unsuccessfully tried to pull defendant's hands off.

Meanwhile, J. hit defendant twice with a skateboard.  Defendant let go of T. and grabbed J., holding J.'s arms behind his back and pushing him to the ground.  J. testified he "th[ought]" defendant's hands were around his throat, and he felt pressure and was having trouble breathing.  Defendant only let go after T. hit defendant twice with the skateboard.  T. and J. each testified that neither he nor any of his friends threatened defendant or his family during the incident.

Police spoke with defendant one hour and 15 minutes after the incident.  Defendant said he saw kids fighting in front of his house and went out to tell them to stop.  One of the kids told defendant he was an adult and "came after [defendant]."  Defendant jumped a fence to confront the kids, who started hitting defendant with a skateboard.  Defendant, who appeared uninjured, said he was "only protecting himself."

2

Police also spoke with defendant's wife, who said she did not hear any threats during the altercation. At trial, however, the wife testified that when defendant first left the house and confronted the boys, she saw one of the boys raise a fist. Defendant and the boys began swearing at each other. One boy threated to "mess up [defendant's] old lady," and defendant's "next action" was to jump the fence and confront the boys.[1] The wife testified that, when the boy threatened to hurt her, she was standing behind their car in the driveway.

The jury was shown video of the incident from the school's surveillance cameras and an eyewitness's cell phone. The video shows the four boys walking on a paved path toward defendant's house. There was a chain link fence between the path and defendant's home, and defendant's driveway was on the side of the house farthest from the school. The boys stopped near defendant's home and began fighting amongst themselves. Defendant then walked out of his home and approached the boys. The boys start walking away from defendant and his house, heading toward the school via the path. The boys had nearly reached the edge of defendant's fence and property when defendant suddenly jumped the fence. One of the victims turned to face defendant, who then began assaulting the victims. After the altercation, the boys returned to the school grounds.

2.      *Jury instructions, jury verdict, and sentencing*

The jury instructions included the self-defense portion of CALCRIM No. 3470.[2] Defense counsel did not object to this instruction, nor did she request that the jury be instructed regarding defense of others.

---

[1] The wife also heard the boy say he would "come back" and "mess up," but she did not hear him identify what.

[2] In pertinent part, the jury was instructed pursuant to CALCRIM No. 3470 as follows: "Self-defense is a [defense] to [assault with force likely to produce great bodily injury and child abuse and endangerment, and those lesser-included offenses to both of those charges]. [¶] The defendant is not guilty of those crimes if he used force against another

3

The jury found defendant guilty of one count of assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)),[3] one count of child abuse (§ 273a, subd. (a)), and one count of child endangerment (§ 273a, subd. (b)).

In September 2018, the trial court suspended imposition of sentence and placed defendant on four years' probation. The trial court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a corresponding $300 probation revocation fine, suspended unless probation is revoked (§ 1202.44), a $200 base fine (§ 672), a $200 penalty assessment (§ 1464, subd. (a)), a $20 DNA penalty assessment (Gov. Code, § 76104.6), an $80 DNA penalty assessment (Gov. Code, § 76104.7), a $100 court facilities construction fee (Gov. Code, § 70372, subd. (a)(1)), a $140 county penalty assessment (Gov. Code, § 76000, subd. (a)(1)), a $40 state criminal fine surcharge (§ 1465.7, subd. (a)), a $60 criminal conviction assessment fee (Gov. Code, § 70373) and a court operation assessment fee (§ 1465.8), and these fees are reflected in the minute order. The minute order also states the trial court separately ordered defendant to pay according to his financial ability the cost of probation services, not to exceed $75 per month, a booking fee of $151, and a $250 probation report fee (§ 1203.1b, subd. (a)); these additional fees were not pronounced by the court during the sentencing hearing. Defendant's only objection to the fines and fees imposed was to request the trial court impose a $300 restitution fine, rather

---

person in lawful self-defense. The defendant acted in lawful self-defense if: [¶] One, the defendant reasonably believed that he was in imminent danger of suffering bodily injury, or was in imminent danger of being touched unlawfully. [¶] Two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend against that danger. [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of [the charges against defendant]."

[3] Undesignated statutory references are to the Penal Code.

than the $1,200 recommended by the probation officer, "in light of the family's financial status, his length of incarceration, and inability to pay."

## DISCUSSION

## I

Defendant argues the trial court erred in failing to include the portion of CALCRIM No. 3470 that instructs on defense of others.[4] According to defendant, the trial court had a sua sponte duty to instruct on the issue because there was substantial evidence in support of such a defense. Defendant points to his wife's testimony that he only jumped over the fence after one of the boys threatened to "mess up [his] old lady."

The People argue that defendant has forfeited the issue on appeal because he failed to seek such an instruction during trial. We will proceed to the merits because a trial court has a sua sponte duty to instruct on a defense even absent a request from counsel if it appears the defendant is relying on such a defense, or if there is substantial evidence of such a defense and the defense is not inconsistent with the defendant's theory of the case.

---

[4] CALCRIM No. 3470, an instruction regarding the right to self-defense or defense of another, instructs in pertinent part that: "Self-defense is a defense to <insert list of pertinent crimes charged>. The defendant is not guilty of [that/those crimes] if (he/she) used force against the other person in lawful (self-defense/ [or] defense of another). The defendant acted in lawful (self-defense/ [or] defense of another) if: [¶] 1. The defendant reasonably believed that (he/she/ [or] someone else/ [or] <insert name of third party>) was in imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully]; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was (imminent danger of bodily injury to (himself/herself/ [or] someone else)/[or] an imminent danger that (he/she/[or] someone else) would be touched unlawfully). Defendant's belief must have been reasonable and (he/she) must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful (self-defense/ [or] defense of another)."

(*People v. Sedeno* (1974) 10 Cal.3d 703, 716, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149.) In considering whether there is sufficient evidence to require a jury instruction, a court "does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.)

Similar to self-defense, a defendant acts in defense of others for an assault charge under section 245 only if he or she has an honest and reasonable belief that bodily injury is about to be inflicted on him or her. The threat of bodily injury must be imminent, and the defendant may only use such force as is reasonable under the circumstances. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065 [elements of self-defense for an assault charge]; CALCRIM No. 3470 [laying out elements for defense of others].)

In *People v. Strozier* (1993) 20 Cal.App.4th 55, the reviewing court found the trial court did not err in refusing to give an instruction on defense of others. (*Id.* at p. 63.) The defendant waited about five minutes before intervening in a fight between his friends and the victim, and only after he himself had been accidentally struck in the head. (*Id.* at p. 58.) Under the circumstances, there was no substantial evidence that the defendant acted in defense of his friends when he entered the fight, rather than in self-defense. (*Id.* at p. 63.)

Similarly here, defendant has failed to point to substantial evidence that he acted in defense of his wife when he assaulted the victims. Even if we credit the testimony of defendant's wife that defendant jumped the fence and physically confronted the boys only after hearing the threat against her, defendant could not have reasonably believed at the time that she was in imminent danger of bodily injury or being touched unlawfully. When the wife heard the threat, she was behind a parked car in their driveway, which was on the side of the house furthest from the school. The boys, meanwhile, were separated from defendant and his property by a fence. As shown in the video, the boys had already

started walking away toward the school when defendant suddenly hopped the fence. At that point, the boys had almost reached the edge of defendant's property. Given the physical separation between the boys and defendant's wife, defendant could not have reasonably believed that his attack on the victims was necessary to defend his wife from such nonexistent danger.

Moreover, defendant told police one hour and 15 minutes after the incident that he had "only [been] protecting himself," and never mentioned his wife. Similar to *Strozier*, the jury was instructed regarding self-defense and decided that issue against defendant. Accordingly, we conclude that defendant's instruction claim is entirely without merit.

## II

Defendant contends the trial court erred in excluding evidence that defendant's wife and children were threatened and assaulted in 1995. According to defendant, the evidence was relevant to his state of mind as to whether he reasonably feared for his own or his wife's safety. Defendant argues the error interfered with his ability to present a defense. We disagree.

1. *Additional background*

Prior to trial, defense counsel moved to introduce evidence that defendant's wife and two children were victimized in a home invasion robbery in 1995. The evening of the incident, defendant was headed to work when he encountered the assailant, who was ranting about hurting defendant's wife. Defendant did not take the threats seriously and continued to work. The assailant subsequently entered defendant's home and demanded gold and cash. When defendant's wife responded she did not have any, the assailant punched defendant's wife. He also shoved one of defendant's children and hit the other with a baseball bat, breaking the child's arm. Defendant was not present during the attack. Defense counsel argued the evidence was admissible because it tended to show that defendant actually believed that his wife was in danger when one of the boys threatened her.

The court ultimately excluded the evidence, reasoning it was more prejudicial than probative. The evidence could shed little light on defendant's state of mind and possible self-defense in the present case, because defendant was not present during the 22-year old incident. The events were also factually dissimilar, especially since it was unclear whether the assailant in 1995 had made an "imminent" threat.

2. *Analysis*

A trial court may exclude evidence under Evidence Code section 352 where its "probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review such rulings for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 214-215.) As courts have explained, "these basic rules of evidence do not violate a defendant's constitutional right to present a defense." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.)

8

The trial court did not abuse its discretion in refusing to admit evidence of the 1995 home invasion robbery because such evidence had minimal probative value. Any such evidence might have shed light on whether defendant would be more likely to believe the boy's threat against defendant's wife. However, it would not explain why such a belief was reasonable, as required for self-defense or defense of others. (*People v. Minifie, supra*, 13 Cal.4th at pp. 1064-1065 [self-defense only applies to an assault charge if the defendant has an " 'honest and *reasonable* belief that bodily injury is about to be inflicted on him' "].) That an assailant once burglarized defendant's home and assaulted his wife and children does not make it more likely that four teenage boys would assault anyone 22 years later under different circumstances, especially since there was no evidence that the boys were in any way associated with the assailant. (Compare *Minifie*, at pp. 1066-1067, 1069 [evidence that defendant was threatened by the victim or a group associated with the victim is admissible to support a claim of self defense because a defendant is " ' "entitled to consider prior threats . . . relevant to interpreting the attacker's behavior" ' "].) Moreover, such evidence would have been cumulative to the video evidence and the multiple eyewitnesses who had already testified regarding defendant's and the victims' behavior during the incident. Given that the minimal probative value of the proposed evidence was substantially outweighed by the probability that its admission would unduly consume time, confuse the issues, and mislead the jury, we reject defendant's contentions.

III

Defendant claims he is entitled to reversal based on cumulative error based on the court's failure to instruct on the defense of others and its exclusion of the evidence of the prior threat and assault. (See, e.g., *People v. Carter* (2003) 30 Cal.4th 1166, 1231.) Because we have not found error, much less prejudicial error, as to any of these claims, we reject the argument.

9

IV

Defendant next challenges two separate conditions of his probation, a condition related to his attendance at school board meetings, and an electronics search condition. Defendant argues the conditions are unconstitutionally overbroad and vague, and invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded on other grounds as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290. Defendant further argues the electronics search condition violates his constitutional rights to be free from unreasonable searches and to privacy under the Fourth, Fifth, and Fourteenth Amendments. As detailed below, we will modify the school board meeting condition but otherwise find defendant's contentions without merit.

 1. *Additional background*

Prior to the sentencing hearing, the probation officer recommended probation or the low term of two years, noting defendant had an "insubstantial" criminal record and was otherwise suitable for probation. The prosecutor disagreed and filed a statement in aggravation, arguing defendant had an "odd fixation" on the victims' school. The prosecutor described defendant's attack on the victims as "part of a pattern of aggressive behavior targeted" at the school. During the sentencing hearing, the prosecutor argued defendant should be sentenced to the midterm of four years.

During the sentencing hearing, defendant's wife testified that it would be a "significant [financial] hardship" on her and the family if defendant was incarcerated. The trial court also heard testimony from the superintendent of the local school district and the victims' school. The superintendent testified that, since 2016, defendant had voiced a "litany of concerns and complaints" during school board meetings, including his ability to use school property. Defendant once grew "very angry and agitated" because he had arrived as the meeting was ending and was unable to address the board; he refused to leave until the police were called. Defendant acted similarly on "several" other

occasions, and the board sent him "at least" three letters restricting his ability to come on campus.

Staff also called police after defendant became "frustrated" and yelled during an August 2016 meeting with a second school district employee. The trial court also heard evidence that, during a jail visit, defendant had complained to his wife that the school had altered the evidence against him.

As terms of defendant's probation, the trial court ordered no contact with the victims, prohibited defendant from being on the victims' school campus or school district property, and imposed the following conditions regarding school board meetings and meeting with school administrators: "If you decide to go to an open and public meeting with the school board, you're to give notice of your intent to appear at that school board meeting through the mail, to be received at least three days prior to that meeting. If you're to attend that public meeting, you're to conduct yourself in a peaceful manner. [¶] If it's allowed through probation -- probation must approve those contacts that you're going to meet with school administrators. Those contacts, again, must be peaceful. If you're going to raise your voice, act in an angry manner, or if they do, doesn't matter where you are or who started what, you must leave that meeting because it's not being done peacefully. And the remaining contacts must be done in writing and with the approval of your probation officer. [¶] So I'm not prohibiting you to attend public meetings and voice your concerns, but you must do it in a rational way. Raising your voice and doing things that you've heard today are not the appropriate way to behave here."

The trial court also imposed the following condition regarding electronics searches: "You're to submit your person, property, vehicle, and residence to warrantless search at any time with or without probable cause at the request of a peace officer or probation officer. And you're to provide passwords or combinations necessary to access electronic devices here which are capable of communications, and that is for the purpose

11

of monitoring potential written communications or ones made through the cell phone to school administration or to either of the [victims]."[5]

At the end of the hearing, the trial court asked defendant whether he "underst[ood] the terms as I've told you?," and defendant responded, "Yes." The trial court asked whether defendant was "willing to follow through with those terms," and defendant responded, "Absolutely."

Defense counsel did not object to any of the terms of defendant's probation. Prior to the trial court imposing probation, she argued defendant would be able to comply with probation rules, "and that can include a complete stay-away order from the [school]."

The minute order does not list the conditions regarding the school board meetings or school administrators, and uses different language to describe the electronics search condition.

### 2. *Ineffective assistance of counsel*

The People contend defendant failed to object during the sentencing hearing and accordingly has forfeited his arguments that the challenged probation conditions were unreasonable under *Lent*[6] or unconstitutional as applied to him. (See *People v. Welch* (1993) 5 Cal.4th 228, 237 [a claim that a probation condition violates *Lent* is forfeited on appeal unless the defendant timely challenged the condition in the trial court]; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*) [a defendant who fails to object to a challenged condition at the trial court may not on appeal raise challenges based on overbreadth or vagueness unless they " 'present "pure questions of law that can be

---

[5] Defendant was also prohibited under his probation conditions from knowingly contacting or being in the presence of the victims, or attempting to do so.

[6] Under *Lent*, a probation condition is invalid if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.)

resolved without reference to the particular sentencing record developed in the trial court" ' "].)  Defendant responds we may consider his *Lent* and as-applied constitutional claims because his counsel was ineffective in failing to object to the conditions.  We disagree with defendant.

To establish a claim of ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant, meaning there is "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674].)  If a defendant fails to establish either component, the ineffective assistance claim fails and we need not address the other component.  (*Strickland*, at p. 697; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

On review, we "defer[ ] to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)  We will reverse " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' " (*People v. Frye* (1998) 18 Cal.4th 894, 980, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  "An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

Despite the probation officer's recommendation for probation or the low term, the People sought imposition of the midterm.  In support of their argument, the People presented testimony about defendant's aggressive behavior during school board meetings, including that police were called and defendant was repeatedly banned from school property.  During the hearing, defendant's wife and defense counsel asked for leniency

13

and probation, with defendant's wife testifying that defendant's incarceration would be a "significant hardship." Defense counsel also argued that defendant would be able to comply with probation rules, including a "complete stay-away order from the [school]." Under these circumstances, we conclude it would not have been irrational for defense counsel to not challenge certain conditions, so as to preserve the favorable disposition. As such, defendant has forfeited his claims that the challenged probation conditions were unreasonable under *Lent* or unconstitutional as applied to him, and we will not review them.

3.     *School board meeting condition*

Turning to the reviewable merits of defendant's contentions regarding the school board meeting condition, we first address the parties' dispute over the meaning of the trial court's statements regarding attending school board meetings. Defendant argues the probation condition requires him to obtain permission from the probation department before attending school board meetings. We agree with the People that the court did not place such a requirement on defendant.

The trial court stated the following conditions for school board meeting attendance: "If you decide to go to an open and public meeting with the school board, you're to give notice of your intent to appear at that school board meeting through the mail, to be received at least three days prior to that meeting. If you're to attend that public meeting, you're to conduct yourself in a peaceful manner." The trial court then stated an additional condition regarding meeting with school administrators: "If it's allowed through probation -- probation must approve those contacts that you're going to meet with school administrators." We disagree with defendant's contention that the word "it's" refers to school board meetings, since the court had changed the subject to meeting with school administrators individually. In sum, we conclude that the trial court imposed two conditions: defendant must (1) provide written notice to attend public school board meetings and conduct himself in a peaceful manner at these public meetings, and (2) seek

14

approval from his probation officer to meet individually with a school administrator and act peacefully during such meetings.

Given our conclusions, we need not reach defendant's argument that the (nonexistent) condition requiring him to obtain permission from his probation officer to attend school board meetings is unconstitutionally overbroad.

Defendant next contends the probation condition requiring him to act "peacefully" at any school board meeting must be stricken because it is unconstitutionally vague and overbroad. A condition is unconstitutionally vague if it is not " 'sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K., supra*, 40 Cal.4th at p. 890.) A condition is unconstitutionally overbroad if it "imposes limitations on a person's constitutional rights" but fails to "closely tailor those limitations to the purpose of the condition." (*Ibid*.) We review de novo whether a probation condition is unconstitutionally overbroad or vague. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Still, "probation is a privilege and not a right, and . . . adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights." (*People v. Olguin* (2008) 45 Cal.4th 375, 384.) In addition, so long as a probation condition " 'serves to rehabilitate and protect public safety, the condition may "impinge upon a constitutional right otherwise enjoyed by the probationer, who is 'not entitled to the same degree of constitutional protection as other citizens.' " ' " (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 993.)

To the extent defendant argues the probation condition is unconstitutionally overbroad because he never violated the law during a school board meeting, his claim is dependent on the particular facts of his case and was forfeited by his failure to object in the trial court. (See, e.g., *Sheena K., supra*, 40 Cal.4th at p. 889 [a defendant who fails to object to a challenged condition at the trial court may not on appeal raise challenges based on overbreadth or vagueness unless they " 'present "pure questions of law that can

15

be resolved without reference to the particular sentencing record developed in the trial court" ' "].)

However, defendant also relies on *In re Kay* (1970) 1 Cal.3d 930 (*Kay*) for the proposition that the condition is unconstitutionally overbroad because he has a right to "voice his opinion in whichever manner he pleases" during open school board meetings. In addition, defendant contends the term "peacefully" is unconstitutionally vague because it fails to notify him of what is required of him. Because these are facial challenges and present pure questions of law, we will consider them on their merits. (See, e.g., *Sheena K., supra*, 40 Cal.4th at p. 887 [challenge to probation condition on ground of unconstitutional vagueness or overbreadth that is capable of correction without reference to sentencing record presents a pure question of law reviewable on appeal].)

We reject defendant's argument that he has an absolute First Amendment right to "voice his opinion in whichever manner he pleases" during school board meetings. Although the Constitution "indubitably affords some measure of protection to the free expression of all those present at a [public] meeting . . . , the state retains a legitimate concern in ensuring that some individuals' unruly assertions of their rights of free expression d[o] not imperil other citizens' rights of free association and discussion." (*Kay, supra*, 1 Cal.3d at p. 941.) For example, in *Kay*, our Supreme Court upheld the constitutionality of section 403, when construed as authorizing the imposition of criminal sanctions when a defendant's activity itself (rather than the activity's content) "substantially impairs the effective conduct of a meeting." (*Kay*, at pp. 942-943 [criminal liability under § 403 can only be imposed where "the defendant substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known"]; see also *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 168-170 [upholding local ordinance similar to § 403]; *McMahon v. Albany Unified School District* (2002) 104 Cal.App.4th 1275, 1286-1289

16

[substantial evidence supported conviction under § 403, where the defendant had emptied bags of garbage onto the schoolroom floor during a school board meeting].)  As the *Kay* court explained, "section 403 draws its content from the implicit customs and usages or explicit rules germane to a given meeting."  (*Kay*, at p. 943.)

Although a condition regulating defendant's behavior at local school board meetings might be constitutionally overbroad as applied to certain probationers, it is not overbroad in all possible circumstances.  Where, for example, police have been called multiple times due to a probationer's prior aggressive behavior with school administrators, such a condition could be closely tailored to protecting the school board's safety and ability to conduct meetings.  We further note that it is "common" for courts to impose probation conditions or restraining orders mandating "peaceful contact" with witnesses or victims.  (See *In re G.B.* (2018) 24 Cal.App.5th 464, 474, fn. 6.) Accordingly, we reject defendant's contention that the condition regarding school board meetings is facially overbroad.

Still, the court's explanation that defendant could not raise his voice or repeat the behavior as described in school administrators' testimony during the sentencing hearing is not sufficiently precise for defendant to know what is required of him during school board meetings.  Accordingly, we will modify the condition to specify the conduct forbidden by it, as follows:  "Defendant shall only act peacefully during school board meetings, which means he shall not substantially impair the effective conduct of a meeting."   The enumerated noncomplying conduct is sufficient to give guidance to defendant, his probation officer, and the court as to the parameters of the proscribed behavior.

4.     *Electronics search condition*

We next address the reviewable merits of defendant's challenge to the electronics search condition.  In evaluating a facial overbreadth challenge to an electronics search condition, we consider whether the search condition in the abstract, and not as applied to

17

the particular probationer, is insufficiently narrowly tailored to the state's legitimate interest in reformation and rehabilitation of probationers *in all possible applications*. (*Sheena K., supra*, 40 Cal.4th at p. 885)  We conclude the answer is "no."  As our Supreme Court has explained, electronics search conditions are not categorically invalid. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1128.)  Although application of this search condition could be constitutionally overbroad as applied to certain probationers, in other circumstances, the defendant's criminal offense or personal history may provide a sufficient basis on which to conclude the condition is a proportional means of deterring future criminality, especially since this search condition is limited to "provid[ing] passwords or combinations necessary to access electronic devices here which are capable of communications, . . . for the purposes of monitoring potential written communications or ones made through the cell phone to school administration or to either of the [victims]."  (See *id.* at pp. 1128-1129.)  In those cases, the imposition of such probation conditions would be constitutional.  Because there could be circumstances in which such a condition was appropriate, we reject the claim that the electronics search condition is facially overbroad.

V

We will next address defendant's argument that the trial court violated his right to due process and the federal and state constitutional prohibitions on excessive fines by imposing fines and fees without holding a hearing to determine his ability to pay them. This argument relies primarily on *Dueñas*, which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373."  (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)  The *Dueñas* court also held "that although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any

18

restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) Defendant requests that we strike or stay the fines and fees, pending a hearing on his ability to pay.

The People respond that defendant has forfeited the issue because he failed to object in the trial court. The People further argue defendant's restitution fines are constitutional, but they do not seek to uphold the imposition of the nonpunitive fines against defendant, should he have the inability to pay. Because we disagree with *Dueñas*, we find defendant's contentions without merit.

In support of its due process rationale, *Dueñas* relies on authorities in which courts have held it is unconstitutional to punish an indigent defendant or impede his or her access to the courts, solely on the basis of his or her poverty. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1165-1168; citing *In re Antazo* (1970) 3 Cal.3d 100, 103 [invalidating practice of requiring convicted defendants to serve jail time if they were unable to pay a fine or a penalty assessment] & *Griffin v. Illinois* (1956) 351 U.S. 12, 16-17, 19-20 [100 L.Ed. 891] [striking down a state practice of granting appellate review only to convicted criminal defendants who could afford a trial transcript].)

As courts have subsequently noted, the line of authorities in *Dueñas* addressing an indigent defendant's right of access to courts are inapplicable because the imposition of the challenged fines and assessments did not affect the ability of the defendant in *Dueñas* to present a defense at trial or to challenge the trial court's rulings on appeal. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946 (*Hicks*); *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 927 (*Caceres*); see also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1038-1039 (conc. opn. of Benke, J.) (*Gutierrez*).)

Similarly, the authorities cited by *Dueñas* prohibiting incarceration for indigence alone are also inapplicable. (*Hicks, supra*, 40 Cal.App.5th at p. 326, rev. granted;

19

*Caceres, supra*, 39 Cal.App.5th at p. 927.)  Defendant was placed on probation and faces at most a civil judgment should he be unable to pay.  We disagree that any resulting negative consequences from a civil judgment constitute punishment rising to the level of a due process violation.  (See *Caceres*, at p. 927 ["*Dueñas* cites no authority for the proposition that [the negative consequences from a civil judgment] constitute 'punishment' rising to the level of a due process violation"]; see also *Gutierrez, supra*, 35 Cal.App.5th at p. 1039 (conc. opn. of Benke, J.) [fines and fees imposed in *Dueñas* did not "satisf[y] the traditional due process definition of a taking of life, liberty or property"].)  Indeed, although our Supreme Court concluded in *Antazo* that it was unconstitutional to incarcerate an indigent defendant simply due to his inability to pay a fine and penalty assessment imposed as a condition of probation, the court did not discharge the defendant from any obligations in his probation order.  (*In re Antazo, supra*, 3 Cal.3d at p. 117.)  The court explained, "we do not hold that the imposition upon an indigent offender of a fine and penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause."  (*Id*. at p. 116.)

Given our conclusions, the Legislature is the appropriate venue to address the "nettlesome" policy issue raised in *Dueñas*, "namely, under what circumstance is it appropriate to require criminal defendants, many of whom are people of little or no means, to pay assessments that help defray the costs of operating the court system and restitution fines that pour into a statewide fund that helps crime victims?"  (*Hicks, supra*, 40 Cal.App.5th at p. 328, rev. granted.)  In sum, the trial court did not violate defendant's due process rights by imposing the fees and fine without first ascertaining his ability to pay them.

## VI

During our review of the record, we noted that the minute order does not accurately reflect the trial court's probation condition regarding electronics searches.  In

20

addition, the minute order does not include the conditions regarding school board meetings and individual meetings with school administrators. It has long been held that where there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. (*People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We will direct the trial court to modify the minute order accordingly.

## DISPOSITION

The judgment is modified in accordance with this opinion. The trial court is directed to issue a revised minute order. As modified, the judgment is affirmed.

_____/s/_____
RAYE, P. J.


We concur:


_____/s/_____
BLEASE, J.


_____/s/_____
HULL, J.